NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GETTY PROPERTIES CORP., | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | |
| v. | **OPINION** |
| RACEWAY PETROLEUM, INC., | Civil Action No. 99-CV-4395 (DMC) |
| Defendant/Third Party Plaintiff, | |
| v. | |
| M.M. WERTHEIM, INC., POWERTEST REALTY, CO., LTD., and JOHN DOES 1-10, | |
| Third Party Defendants. | |
| M.M. WERTHEIM, INC., | |
| Fourth Party Plaintiff, | |
| v. | |
| HUDSON ENVIRONMENTAL SERVICES, INC. and ADR TANK & ENVIRONMENTAL SERVICES, INC., previously d/b/a A. RIVERS BACKHOE SERVICES. | |
| Fourth Party Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion for sanctions by Plaintiff Getty Properties Corp. and Third-Party Defendant Power Test Realty, Co., Ltd. (collectively, "Getty") and cross-motion for sanctions by Defendant Third Party Plaintiff Raceway Petroleum, Inc.

("Raceway"). No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. After carefully considering the submissions of all parties, it is the finding of this Court that Getty's motion is **denied**. Additionally, Raceway's motion is **denied**.

## I. <u>BACKGROUND</u>[1]

This matter involves a dispute between Getty and Raceway over a parcel of land which Raceway leased from Getty ("the Property"), located in Freehold, New Jersey. There is no dispute that there is significant gasoline contamination at the Property. From 1975 to 1992, Getty operated a gasoline station at the Property. In July 1992, Getty and Raceway entered into a five-year lease agreement of the Property including an option to purchase. At that time, both Getty and Raceway acknowledged that the Property was contaminated. Pursuant to the terms of the lease, Getty was responsible for the remediation of any contamination existing at the site prior to Raceway's occupation. Raceway has operated a gasoline station at the Property since 1993. In 1996, the New Jersey Department of Environmental Protection ("NJDEP") contacted Raceway to notify it of a discharge of gasoline at the Property. In response, Getty asserted that Raceway was the source of contamination at the Property, and as such, had failed to comply with all terms of the lease agreement.

To initiate this litigation, Getty filed a complaint against Raceway alleging that it was responsible for the contamination in September 1999, and seeking the remediation and return of the Property. In December 1999, Raceway filed a counterclaim against Getty seeking substantially similar relief. Subsequently, numerous third and fourth parties have been added to the lawsuit, which has been proceeding in discovery for over three years.

---

[1] Many of the facts underlying this action are hotly contested by the parties. As such, the Court will provide only a brief background description here.

In the instant motions, both Getty and Raceway seek sanctions against one another for various alleged discovery abuses, pursuant to Federal Rule of Civil Procedure 37. Specifically, Getty argues that it is entitled to the following relief: 1) Raceway's defenses to Getty's environmental claims should be stricken, and judgment be entered in favor of Getty; 2) this Court should order certain facts deemed established; 3) this Court should draw an adverse inference based upon Raceway's alleged failure to preserve certain evidence; 4) Raceway should be ordered to pay all of Getty's attorney fees; and 5) Raceway should establish a $4 million fund to remedy contamination at the Property. Raceway, in turn, seeks an order of this Court requiring Getty 1) to produce certain information Raceway has requested, or 2) to provide a certification as to why such information is not available. Raceway also seeks payment of attorney fees and costs associated with conducting any additional discovery based on the production of the information, as well as fees and costs in connection with the instant motions.

## II. DISCUSSION

### A. Rule 37

Federal Rule of Civil Procedure 37(c)(1) provides, in relevant part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

For violation of this subsection, the court may impose sanctions listed under subsection 37(b)(2), as follows:

> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

-3-

>  (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party...

A district court must make factual findings sufficient to support its decision to impose sanctions. Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc., 339 F.3d 180, 185 (3d Cir.2003) (citation omitted).

It is true that Rule 37 is written in mandatory terms, and is designed to provide a strong inducement for disclosure of Rule 26(a) material. Nonetheless, the rule expressly provides that sanctions should not be imposed if substantial justification exists for the failure to disclose, or if the failure to disclose was harmless. Thus, the rule does not leave district courts without discretion. Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir.1995) (internal quotations omitted). Before precluding a party from presenting evidence at trial, a court must find that the party: 1) revealed previously undisclosed evidence when trial was imminent; or 2) acted in bad faith, which is more than a lack of diligence. Velez v. QVC, Inc., 2004 WL 1175726 *1 (E.D.Pa. May 25, 2004).

Additionally, a party may violate discovery rules by destroying or failing to preserve certain evidence. In determining whether sanctions are an appropriate remedy for the alleged destruction of evidence, the Court must consider three factors: 1) the degree of fault of the party who altered or destroyed the evidence; 2) the degree of prejudice suffered by the opposing party; and 3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing

party, and where the offending party is seriously at fault, will serve to deter conduct in the future. In re DaimlerChrysler AG, 2003 WL 22951696, *1 (D.Del.2003) (citing Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir.1994)).

**B. Getty's Motion**

Getty alleges that Raceway has failed to preserve documents, computer evidence, and a portion of repaired pipe. It further alleges that Raceway failed to timely produce certain evidence such that the information was not available to Getty during critical stages of discovery. Getty contends that these actions constitute serious violations of the discovery rules, severely prejudicing Getty's case and warranting the imposition of significant sanctions. On the other hand, Raceway has offered justifications and responses to Getty's allegations. Raceway asserts that it has acted in good faith at all times to comply with discovery requests and Orders of this Court. As Getty cites very discrete and fact-specific actions on the part of Raceway in support of the motion for sanctions, this Court shall examine each of Getty's contentions and Raceway's responses in turn.

**1. Daily Inventory Records**

Getty claims that it requested the production of all daily inventory records kept by Raceway. (Pl.'s Br. in Supp. of Mot. for Sanctions ("Pl.'s Br.") at 28.) Getty argues that Raceway has only supplied monthly records and destroyed the daily records. (Id.) Getty contends that it is entitled to have the Court draw an adverse inference against Raceway that the daily records "would have disclosed a loss of gasoline." (Pl.'s Reply Br. in Supp. of Mot. for Sanctions ("Pl.'s Rep. Br.") at 7.) Getty further seeks to preclude Raceway "from relying on the monthly

records to prove that there was no such loss." (Id.)

Raceway asserts that it performs all inventory reconciliations on a monthly basis as required by NJDEP regulations, and that it does not maintain daily records for longer than six months in the normal course of its business. (Def.'s Br. in Opp. to Mot. for Sanctions ("Def.'s Br.") at 28-29.) Accordingly, Raceway contends that it has no daily records to turn over, and sanctions are inappropriate as "the absence of these daily records does not result from an intentional, willful act to hide or destroy evidence, but from the long-established business practice of Raceway not to retain those records." (Id. at 29.) Raceway further argues that no prejudice will befall Getty without benefit of the daily records because all relevant information which may be gleaned from the daily records is available in the monthly records. (Id.)

This Court finds that Raceway's failure to retain the daily records, though perhaps negligent, was not intentional, as the retention of such voluminous records was not in the normal course of its business nor required by NJDEP environmental regulations. Additionally, Getty's contention that any information contained in the daily records may have shown a gasoline loss that does not appear in the monthly records is not supported by evidence. Getty has offered no explanation or theory as to how this variance might exist, yet not be reflected in the monthly records. Indeed, if such a discrepancy were possible, it is likely that NJDEP would mandate the retention of daily records to uncover such a fact. This Court agrees that all relevant data available from the daily records may be gathered from the monthly records. Accordingly, the Court finds that no harm accrued to Getty as a result of Raceway's failure to preserve and produce the daily records, and Raceway shall not be sanctioned on such a basis.

### 2. Veeder Root System

Getty next argues that Raceway failed to create and preserve alarm history reports from the computerized Veeder Root system in place at the Property. (Pl.'s Br. at 28.)  Getty alleges that such reports would contain information relating to the dates and times that various alarms were triggered, including tank overfill alarms. (Id. at 14.)  Getty contends that Raceway should have preserved these reports from any one of the following dates: 1993, when Raceway began operations at the Property; 1996, when NJDEP gave notice of a discharge at the Property; 1999, when Getty filed the instant suit; 2000, when Getty served document requests seeking "monitoring and inventory control records"; or 2001, when Raceway received Getty's letter request for "Veeder-Root operational logs." (Id. at 15.)  Raceway ultimately created and produced Veeder Root alarm history reports from November 27, 2002 to March 25, 2004, which Getty contends are inadequate as the relevant period of time for gasoline discharge in this lawsuit is 1996 through 1999. (Id.)  Getty seeks an adverse inference that the Veeder Root records would have confirmed that gasoline leaked into the environment. (Id. at 35.)

Raceway asserts that it has complied with all discovery obligations regarding the Veeder Root records. (Def.'s Br. at 29.)  Raceway contends that the Veeder Root system does not automatically generate printed alarm history reports and that Raceway does not cause these records to be generated in the ordinary course of its business. (Id. at 31.)  Raceway argues that, once the Court ordered production of any remaining Veeder Root data, Raceway generated as many records as possible. (Id. at 30.)  Raceway concludes that it should not be sanctioned for failing to produce records which it never even possessed. (Id. at 31.)

As above, this Court agrees that Raceway is not responsible to produce records not kept within the normal course of its business. Not only did Raceway not maintain alarm history reports, but it did not even create them. Getty relies on a recent case out of the Southern District of New York in support of its arguments that sanctions for spoilation are warranted here. Zubulake v. UBS Warburg LLC, 2004 WL 1620866 (S.D.N.Y. Jul. 20, 2004). In Zubulake, the District Court sanctioned the defendant by creating an adverse inference that emails the defendant had willfully deleted, in violation of a discovery order, were harmful to the defendant's case. 2004 WL 1620866 at *12-13. However, this case is distinguishable as it deals with the active deletion of data as opposed to the failure to create data. Raceway's failure to create more reports than it used in the daily activities of its business is not the kind of willful action that discovery sanctions are intended to redress. As such, this Court will not sanction Raceway for failing to preserve Veeder Root reports.

**3. "Flex Connector"**

Getty alleges that Raceway has destroyed a portion of secondary fiberglass piping surrounding a previously repaired flex connector pipe in an underground storage tank. (Pl.'s Br. at 29.) Getty asserts that this piping would help to prove its claims against Raceway, as any damage to the pipe would demonstrate that gasoline had leaked into the environment. (Id.) Raceway contends that it has not destroyed the pipe and that it is in fact still being used as part of Raceway's underground storage tank system. (Def.'s Br. at 9.) It further argues that Getty has never requested an opportunity to examine the piping. (Id.) Getty has not disputed this assertion. Accordingly, this Court will not order any sanctions against Raceway for spoilation of evidence

that in all likelihood is still preserved underground at the Property.  Additionally, the Court directs Getty and Raceway to contact Magistrate Judge Falk, who will determine the appropriateness of any further discovery relating to this portion of piping.

### 4. NJDEP Communications

Getty asserts that Raceway failed to timely produce notices received from NJDEP, in violation of a discovery Order issued by Magistrate Judge Falk on March 17, 2004, as a result of a discovery conference conducted over the telephone on March 9, 2004. (Pl.'s Br. at 29.)  Getty contends that Raceway received a notice from NJDEP on March 10, 2004, regarding field environmental testing at the Property, but did not produce the notice to Getty until March 18, 2004. (Pl.'s Rep. Br. at 15.)  Getty alleges that had it received the notice prior to March 18, its expert could have been present at the Property to observe testing and excavation activities taking place during that week. (Id. at 16.)  Due to Raceway's delay in producing the letter, Getty argues that it was prejudiced by missing the testing conducted between March 10 and March 17, 2004, and seeks appropriate sanctions against Raceway. (Id.)

Raceway counters that it produced the NJDEP notice regarding testing promptly in response to the March 17, 2004 Order. (Def.'s Br. at 16.)  Additionally, Raceway argues that minimal testing was performed between March 10 and March 17, and that Getty's expert was present during the bulk of the excavation and testing performed from March 18 to March 22. (Id.)  Raceway further argues that it produced the notes and documents generated by its own expert during the week of March 10, affording Getty's expert the opportunity to examine the information, and thus Getty suffered no harm as a result of missing the week of preliminary

testing. (Id.)

Getty has not alleged specifically which testing activities it was not present for during the week of March 10, 2004. It has submitted a subsequent notice to Raceway from NJDEP issued on March 16, 2004, which indicates that gasoline deliveries should cease as the underground tanks at the Property were suspected of leaking. (Kealy Cert., Ex. P.) This notice seems to support Raceway's argument that excavation did not take place during the week of March 10, as presumably gasoline deliveries would have ceased earlier if excavation had begun. Therefore, although Raceway has not offered an entirely satisfactory explanation for its tardiness in producing the March 10 notice, Getty has failed to demonstrate any harm it suffered in not having its expert present to observe preliminary testing activities at the Property before March 18, 2004. This conclusion is further supported by the fact that Getty's expert had the benefit of the notes taken by Raceway's expert. The Court declines to impose sanctions on Raceway based on its alleged violation of the March 17, 2004 Order.

### 5. Tanknology Test and Flex Connector Invoice

Getty alleges that Raceway failed to timely produce the results of a tank tightness test performed by Tanknology on April 3, 1999 and an invoice for the repair of a faulty flex connector pipe by M.M. Wertheim, Inc. on March 12, 1996. (Pl.'s Br. at 29-30). Raceway maintains that it had no copy of the test results in its files because the initial April 3 tank tightness test was retested as the result of a vacuum deficiency on April 26, 1999. (Def.'s Br. at 13-14.) Raceway claims it only received a copy of the second test results, which it produced to Getty. (Id. at 14.) Raceway also alleges that the delayed production of the March 12, 1996

invoice was the result of mistake and confusion because Raceway believed it had already produced the invoice. (Id. at 8.)  Raceway disputes that Getty was harmed by the delayed production because Getty had notice of the date of the repair from the deposition of a Wertheim employee who testified to the repair in 1996. (Id. at 9.)

Raceway's explanations are sufficiently reasonable and do not demonstrate bad faith on its part.  In the course of such an enormous litigation, this Court cannot sanction a party for delayed production of documents as the result of reasonable mistake or inadvertence.  Additionally, Getty bases its motion for sanctions with regard to the Tanknology report partially upon Raceway's failure to submit the report to the NJDEP. (Pl.'s Rep. Br. at 10.)  Raceway's production of its correspondence with NJDEP regarding the April 26, 1999 Tanknology test supports the argument that Raceway did not have the results of April 3, 1999 test in its files.

## C. Raceway's Motion

Raceway seeks sanctions against Getty for failing to produce inventory or inventory reconciliation records prior to Raceway's occupation of the Property in 1993.  Specifically, Raceway requests the Court order Getty to provide a certification as to why certain information is not available for production. (Pl.'s Br. at 39.)  Raceway seeks this same relief with regard to production of information regarding previous occupiers of the Property. (Id.)  Getty responds that it has produced all of the information in its possession; Raceway disputes this assertion. (Pl.'s Rep. Br. at 17.)  Getty also alleges that Raceway has not previously requested this information through discovery. (Id. at 19.)  Without sufficient evidence before it to determine whether, in fact, such information is actually within Getty's possession, the Court shall not sanction Getty on

such a basis. To the extent that Raceway has not previously sought production of the information it now requests, this Court refers the parties to Magistrate Judge Falk, who will determine the appropriateness of further discovery regarding this issue.

### D. Attorney's Fees

Both Getty and Raceway seek attorney's fees in connection with this motion. As this Court has denied each party's motion for sanctions, an award of attorney's fees is inappropriate. Accordingly, such requests are denied.

### E. Remedial Fund

Getty argues that this Court should order Raceway to establish a funding source of at least $4 million to satisfy an obligation to remedy the Property pursuant to an Administrative Consent Order with NJDEP. The Court declines to address the merits of this argument as it is outside the scope of the instant motions and the Court need not concern itself with enforcing consent orders of NJDEP. Getty's request is denied.

### III. CONCLUSION

For the foregoing reasons, it is the finding of this Court that Getty's motion for sanctions is **denied**. Furthermore, Raceway's motion for sanctions is **denied**. An appropriate Order accompanies this Opinion.

  S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        June 7, 2005
Original:    Clerk's Office
cc:          All Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File